IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DIRECTV, INC., )
 )
      Plaintiff, )
 )
      v. ) 1:03CV1033
 )
WILLIAM FURR, WILLIAM K. )
ALLEN, BRENT BARNETTE, )
JANNETTS BASS, BARRY V. )
BATEMAN, TRACY BENNETT, )
ALBERT E. BLACK, JAMES )
BOETTCHER, JOYCE HARRISON, )
JON MADDY, JEFFERY )
MITCHELL, and JOSEPH PRYCE, )
 )
      Defendants. )

## RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on before the court on motion of Plaintiff DIRECTV for default judgment against Defendant Jannetts Bass (now King) (docket no. 50). According to the procedure established by the court, the parties were directed to submit in affidavit form, non-hearsay evidence relevant for the determination of the amount of damages, costs, and attorneys' fees to be assessed (docket no. 86). Moreover, either party was permitted to request an in-court hearing where, in addition to the submitted documentary evidence, witness testimony would be heard and considered. Defendant Bass (now King) requested such a hearing where she testified and was subjected to cross-examination by Plaintiff's counsel and to

questioning by the court. On the basis of the record thus developed, the court makes the following

RECOMMENDED FINDINGS OF FACT

1. Because a default has been entered against her (docket no. 22), Defendant's liability is established. She is, therefore, *potentially* liable to Plaintiff for the full amount of damages asserted in the complaint, and the court may assess this amount in the absence of mitigating evidence.

2. Nevertheless, because Plaintiff DIRECTV's claim against Defendant is not for a sum certain or for a sum which can by computation be made certain, FED. R. CIV. P. 55 (b)(1), the court has provided for the hearing procedure as noted above, *id.* Rule 55 (b)(2).

3. DIRECTV has proved and Defendant has admitted that, in April 2001, after Defendant subscribed to DIRECTV service in 1995, she bought one "Bootloader EMU Net210" which consisted of a "bootloader," an "emulator," and a "Netsignia 210 Programmer;" and a bootloader, a "Dual Pro Su2," and an emulator all from Digital Source Solutions d/b/a/ DssPro, a business operated by Li Sang. *See* Notice, etc., Ex. A, ¶¶ 17-18 (docket no. 91). Li Sang sold and distributed satellite signal theft devices primarily through several websites. A bootloader is a device that is specifically designed to circumvent DIRECTV's electronic security measures commonly referred to as Electronic Counter Measures (ECMs). *See id.* at ¶ 22. An emulator duplicates or "emulates" the functions of a DIRECTV access card and

allows the user access to DIRECTV's programming without detection or payment. *Id.* at ¶ 23. A "Netsignia 210 Programmer" permits a user to "clone" valid DIRECTV access cards or to program access cards thereby permitting receipt of DIRECTV programming. *Id.* at ¶ 24. The "Dual Pro Su2" is an "unlooper" which is designed to restore functionality to illegally modified access cards that were disabled by misuse or by DIRECTV's electronic security measures commonly referred to as Electronic Counter Measures (ECMs). *Id.* at ¶ 25. The purchase of these devices is an indication that the user intends to receive illegal access to DIRECTV's programming without detection by or payment to DIRECTV. Defendant paid $530.96 for these devices, paying for them by credit card.

  4. In addition to Defendant admitting that she bought these devices, she nevertheless claimed that she did not use them for any purpose, including pirating DIRECTV's signal, because she intended to buy entirely different devices. She said that she intended to buy a "network card" to use on the computers in her tax preparation business. She said that she bought this device because it was described as a "smart card" and she thought that was getting a network card. She claimed that, once she realized her mistake, she was unsuccessful in returning these devices. I am unable to credit Defendant's story. She showed by her testimony that she knew the difference between a smart card ("digital devices that you store information on") and a network card (devices that connect computers), yet she repeatedly maintained that she somehow thought these devices might be one in the

Case 1:03-cv-01033   Document 110   Filed 08/16/05   Page 3 of 5

same. Furthermore, she never explained how it was that she confused a smart card or a network card with something called a bootloader, a Dual Pro Su2, or an emulator. Furthermore, she claimed that she was unable to return the devices because the package contained no contact information for the manufacturer and that she was unable to relocate the website. Considering that the purchase was paid for by credit card, however, she could have used her credit card statement for information or she could have used assistance from the credit card company itself to locate the seller. In addition, most online businesses provide printable receipts which have their website addresses. Defendant is a tax-preparer and she must know the importance of keeping records and using them as needed.

These Recommended Findings of Fact support the following

RECOMMENDED CONCLUSIONS OF LAW

1. By reason of the entry of default against her, Defendant is liable to DIRECTV.

2. In keeping with an alternative dispute resolution plan which this court has developed by consensus for the expeditious resolution of all DIRECTV cases where there is no demand for or entitlement to either a bench trial or a jury trial, and because the court has found Defendant to be less than forthcoming in her testimony, the court determines that Defendant must pay to DIRECTV the sum of $10,000.00 for the purchase of these devices. In addition, Defendant must pay DIRECTV's

attorneys' fees in the amount of $177.46[1] and costs in the amount of $205.00.  Last of all, Defendant should be permanently enjoined from committing or assisting in the commission of any violation of the Cable Communications Policy Act of 1984, as amended, 47 U.S.C. § 605, or committing or assisting in committing any violation of 18 U.S.C. § 2511.

_____
Wallace W. Dixon
United States Magistrate Judge

August 16, 2005

---

[1] Plaintiff's motion seeks attorneys' fees in the amount of $177.46 and this amount should be awarded.  The proper amount, however, would appear to be $60.00 greater.  Fees claimed by Ellis & Winters total $137.50; fees claimed by Greer, Herz & Adams total $99.96 ($39.96 billed and $60.00 yet to be billed); thus the correct total of $237.46.